UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
FORT WAYNE DIVISION

| | |
|---|---|
| LISA D. THOMAS, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) CAUSE NO.: 1:03-CV-360-TS |
| | ) |
| BOX USA GROUP, INC., | ) |
| | ) |
| Defendant. | ) |

**OPINION AND ORDER**

**PROCEDURAL BACKGROUND**

Convinced that, the Defendant, the Plaintiff's former employer, discriminated against her on the basis of her gender and paid her a lower salary than it paid men, she filed charges against it with the Equal Employment Opportunity Commission. Eventually, the Plaintiff sued the Defendant in this Court for the same reasons and for sexual harassment in the workplace.

On February 20, 2004, in accordance with Federal Rule of Civil Procedure 36, the Defendant served upon the Plaintiff a Request for Admissions. The Plaintiff responded to the request fifty-six days later, on April 16, 2004.

On May 26, 2004, the Defendant moved for discovery sanctions against the Plaintiff and dismissal of the case. On June 9, 2004, the Court granted the motion for sanctions but denied the motion to dismiss. On that same day, the Court set September 20, 2004, as the due date for dispositive motions.

On September 1, 2004, Magistrate Judge Roger Cosbey held a scheduling conference but the Plaintiff's attorney failed to be present. Judge Cosbey issued an order to show cause for the

attorney's absence, and, on September 22, 2004, ordered monetary sanctions against him.

On October 29, 2004, the Plaintiff moved for leave to pursue discovery after the discovery deadline had expired. On November 12, 2004, Judge Cosbey denied the Plaintiff's motion.

On December 15, 2004, the Defendant moved for summary judgment. On January 4, 2005, the Court held a telephone pretrial conference, where it was advised by the parties that the briefing on the Defendant's motion for summary judgment was on track. Nevertheless, the Plaintiff did not respond to the motion until February 2, 2005, nineteen days after her response was due.

On February 17, 2005, the Defendant moved to strike the Plaintiff's response to its motion for summary judgment for failing to comply with Local Rule of Civil Procedure 56.1. The Plaintiff has not responded to the motion.

On May 2, 2005, the Defendant moved to continue the final pretrial conference and trial.

## DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

**A.  Summary Judgment Standard**

The Federal Rules of Civil Procedure mandate that motions for summary judgment be granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). Rule 56(c) further requires the entry of summary judgment, after adequate time for discovery, against a party "who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). "[S]ummary judgment is appropriate—in fact, is mandated—where there are

no disputed issues of material fact and the movant must prevail as a matter of law. In other words, the record must reveal that no reasonable jury could find for the nonmoving party." *Dempsey v. Atchison, Topeka, & Santa Fe Ry. Co.*, 16 F.3d 832, 836 (7th Cir. 1994) (citations and quotation marks omitted).

A party seeking summary judgment bears the initial responsibility of informing a court of the basis for its motion and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact. *Celotex*, 477 U.S. at 323. The moving party may discharge its "initial responsibility" by simply "'showing'—that is, pointing out to the district court—that there is an absence of evidence to support the non-moving party's case." *Id.* at 325. When the non-moving party would have the burden of proof at trial, the moving party is not required to support its motion with affidavits or other similar materials negating the opponent's claim. *Id.* at 323, 325; *Green v. Whiteco Indus., Inc.*, 17 F.3d 199, 201 n.3 (7th Cir. 1994); *Fitzpatrick v. Catholic Bishop of Chicago*, 916 F.2d 1254, 1256 (7th Cir. 1990). However, the moving party may, if it chooses, support its motion for summary judgment with affidavits or other materials and thereby shift to the non-moving party the burden of showing that an issue of material fact exists. *Kaszuk v. Bakery & Confectionery Union & Indus. Int'l Pension Fund*, 791 F.2d 548, 558 (7th Cir. 1986); *Bowers v. DeVito*, 686 F.2d 616, 617 (7th Cir. 1982); *Faulkner v. Baldwin Piano & Organ Co.*, 561 F.2d 677, 683 (7th Cir. 1977).

Once a properly supported motion for summary judgment is made, the non-moving party cannot resist the motion and withstand summary judgment by merely resting on its pleadings. Fed. R. Civ. P. 56(e); *Donovan v. City of Milwaukee*, 17 F.3d 944, 947 (7th Cir. 1994). Federal Rule of

Civil Procedure 56(e) establishes that "the adverse party's response, by affidavits or as otherwise provided in this rule, must set forth specific facts to establish that there is a genuine issue for trial." Fed. R. Civ. P. 56(e); *see also Anderson v. Liberty Lobby*, 477 U.S. 242, 248-50 (1986). Thus, to demonstrate a genuine issue of fact, the non-moving party must do more than raise some metaphysical doubt as to the material facts; the non-moving party must come forward with specific facts showing that there is a genuine issue for trial. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986); *Juarez v. Ameritech Mobile Communications, Inc.*, 957 F.2d 317, 322 (7th Cir. 1992). Conclusory allegations and self-serving affidavits, if not supported by the record, will not preclude summary judgment. *Haywood v. N. Am. Van Lines, Inc.*, 121 F.3d 1066, 1071 (7th Cir.1997).

In viewing the facts presented on a motion for summary judgment, a court must construe all facts in a light most favorable to the non-moving party and draw all legitimate inferences and resolve all doubts in favor of that party. *NLFC, Inc. v. Devcom Mid-Am., Inc.*, 45 F.3d 231, 234 (7th Cir. 1995); *Doe v. R.R. Donnelley & Sons Co.*, 42 F.3d 439, 443 (7th Cir. 1994); *Beraha v. Baxter Health Care Corp.*, 956 F.2d 1436, 1440 (7th Cir. 1992). A court's role is not to evaluate the weight of the evidence, to judge the credibility of witnesses, or to determine the truth of the matter, but instead to determine whether there is a genuine issue of triable fact. *Anderson*, 477 U.S. at 249–50; *Doe*, 42 F.3d at 443.

**B.      Defendant's Motion to Strike the Plaintiff's Response to the Defendant's Motion for Summary Judgment**

On December 15, 2004, the Defendant moved for summary judgment. The Plaintiff did not respond to the motion until February 2, 2005, forty-nine days after the motion was filed. The

Plaintiff did not ask for the Court's leave to file a late response.[1]

The Defendant has moved to strike the Plaintiff's response as late. The Plaintiff did not respond to this motion.

Local Rule 56.1 states that

> Any party opposing the motion [for summary judgment] shall, within thirty (30) days from the date such motion is served upon it, serve and file any affidavits or other documentary material controverting the movant's position together with a response that shall include in its text or appendix thereto a "Statement of Genuine Issues" setting forth, with appropriate citations to discovery responses, affidavits, depositions, or other admissible evidence, all material facts as to which it is contended that there exists a genuine issue necessary to be litigated.

Accordingly, the Plaintiff's response was due within thirty days of being served with the motion for summary judgment. And if that deadline was cumbersome to meet, the Plaintiff could have petitioned the Court for an extension. Yet, that did not happen. Instead, without any explanation for her tardiness, the Plaintiff filed her response nineteen days late. Moreover, once the Defendant moved to strike the motion as late, the Plaintiff did not respond, so as to give the Court a chance to consider the reason for the delay.

The Court must insist on compliance with procedural rules to promote uniform administration of justice. *McNeil v. United States*, 508 U.S. 106, 113 (1993) ("[I]n the long run, experience teaches that strict adherence to procedural requirements specified by the legislature is the best guarantee of evenhanded administration of the law.") (internal quotations and citation

---

[1] This was not the first time the Plaintiff, who is represented by counsel, disregarded the Court's procedures. The following is a list of her other violations:
- (1) she served her Rule 26(a)(1) Initial Disclosures three months after the Court's deadline;
- (2) she failed to provide timely and complete response to discovery requests;
- (3) she failed to appear for her May 26, 2004, depositions;
- (4) she failed to pay her monetary sanctions ordered by this Court on June 9, 2004;
- (5) her counsel failed to appear at the September 1, 2004, hearing.

omitted). If the Court expects unrepresented litigants to abide by the rules of civil procedure, more so the principles of orderliness apply to represented parties. *Cf. Members v. Paige*, 140 F.3d 699, 702 (7th Cir. 1998) ("[R]ules apply to uncounseled litigants and must be enforced."). Therefore, the Court will strike the Plaintiff's response as untimely.

**C.  Defendant's Requests for Admission**

On February 20, 2004, the Defendant served the Plaintiff with its Requests for Admission. The Plaintiff failed to respond within the thirty days required by the Federal Rule of Procedure 36(a), and by default admitted all of the Defendant's requests:

> The matter is admitted unless, within 30 days after service of the request, or within such shorter or longer time as the court may allow or as the parties may agree to in writing, subject to Rule 29, the party to whom the request is directed serves upon the party requesting the admission a written answer or objection addressed to the matter, signed by the party or by the party's attorney.

Fed. R. Civ. P. 36(a); *see also United States v. Kasuboski*, 834 F.2d 1345, 1350 (7th Cir. 1987) ("Rule 36(a) . . . clearly provides that a party must answer each matter for which an admission is required within 30 days or the matter is deemed admitted.").

Once admitted under Rule 36, the matter becomes conclusively established and a party may not deny the admission unless the court permits it to withdraw the admission under Rule 36(b). *See Kasuboski*, 834 F.2d at 1350. Such admissions, even the default ones, may serve as the factual predicate for summary judgment, and a party may not attack them by resisting a motion for summary judgment. *Id*; *see* Fed. R. Civ. P. 56(c) ("The judgment sought shall be rendered forthwith if . . . admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.").

> This result is based on sound policy. Rule 36 allows parties to narrow the issues to be resolved at trial by effectively identifying and eliminating those matters on which the parties agree. This function would be lost if parties were permitted to contest under Rule 56 a matter concluded under Rule 36. . . . We recognize the potential harshness of this result. The failure to respond to admissions can effectively deprive a party of the opportunity to contest the merits of a case. This result, however, is necessary to insure the orderly disposition of cases; parties to a lawsuit must comply with the rule of procedure. In addition, the harshness is tempered by the availability of the motion to withdraw admissions.

*Id*.

The Plaintiff did not attempt to withdraw her default admissions. Consequently, the Court will consider them in its finding of facts.

**D.  Material Facts**

The Defendant is a corrugated box manufacturer. It has antidiscrimination and antiharassment policies, which provide a mechanism for its employees to report discrimination and harassment in the workplace. One of the Defendant's plants is in Hartford City, Indiana.

The Defendant hired the Plaintiff in March 1999 as a unitizer operator in the Hartford plant's shipping department. In April 2002, she left this bargaining unit position for a salaried office job as roll stock clerk. At the time, Marvin Hetrick, the plant's general manager, promised her that she could return to her bargaining unit position if things did not work out in the salaried position.

From 1972 until March 2000, Robert King was the shipping supervisor at the Hartford City plant. King was solely responsible for the shipping duties on all shifts at the plant and, at the time he left the position, he received $40,684 salary. The Defendant had difficulty replacing King. His first replacement, Gloria Reis, resigned six months after she started. Scott Gates then took the position but was terminated less than two months later. Reis and Gates were compensated at the rate

of $35,000 a year.

The Defendant next offered the shipping supervisor's position to Ron Warner, a bargaining unit employee, who had been with the company since May 1988. Warner initially turned down the job, but accepted it on January 2001, when the Defendant agreed to pay him a $38,000 salary. His salary grade was 13. He was the only shipping supervisor at the Hartford City plant and had sole responsibility for all the operations of the shipping department.

Warner had difficulties handling his responsibilities. To avoid hiring a fourth person for the same position in less than a year, the Defendant decided to hire an assistant supervisor who would handle some of the responsibilities. Valery Federspiel was chosen for that position. She had been employed with the Defendant since 1999 and her salary grade was 12. Federspiel had less responsibility than Warner, who remained ultimately accountable for the shipping department. She was compensated $28,000 a year.

Although Federspiel was assisting Warner, the shipping department continued to experience problems. As a result, on August 2, 2002, Warner was terminated. After his termination, the Defendant changed the management structure in the shipping department; two shipping supervisors would share equal responsibilities within the department.

The Plaintiff, who was working as roll stock clerk, was chosen to be one of those supervisors. On the basis of her salary grade 12, her compensation was set at $29,000 a year. Federspiel was the other supervisor. They were jointly responsible for the operations of the shipping department from August 2002 until November 1, 2002.

On October 31, 2002, Dean Gullickson, the Defendant's corporate traffic manager, visited the Hartford City plant. The Plaintiff met Gullickson for the first time on that visit. They met in her office to discuss the possibility of obtaining new trucks for the plant. During their meeting,

Gullickson invited her to have a drink and asked her if she wanted to have a good time. The Plaintiff rejected Gullickson's invitation, stating that she had a lot of work, and never spoke to him after that.

On November 1, Hetrick told Dale Gorham, the Plaintiff's immediate supervisor, that the Plaintiff was accused of making a racial epithet in the presence of Gullickson and Kevin Curran. Hetrick asked Gorham to investigate the accusation and issue a written warning for the Plaintiff, if appropriate.

Gorham interviewed Gullickson and Curran and both of them confirmed that the Plaintiff had argued with a dispatcher, hung up the phone, and said "that f****** n*****." The same day, Gorham and Lyle Hedden, the Plaintiff's other supervisor, met with the Plaintiff to discuss her conduct and issue discipline to her. During the meeting, the Plaintiff was warned that her use of the racial slur was unacceptable and that any future use of the term would result in disciplinary action and, possibly, termination. Gorham reminded the Plaintiff that one supervisor had been severely reprimanded for making a disparaging remark about a woman employee, and that another supervisor had been fired for making a racially biased comment to a black employee.

At the conclusion of this meeting, the Plaintiff told Gorham and Hedden that she intended to resign. She left the plant before the end of her shift and told Hetrick that she was quitting. Three days later, the Plaintiff contacted Hetrick and asked him if she could return to work at the plant as a bargaining unit employee. Although Hetrick had previously promised her that she could return to the bargaining unit if her job as a roll stock clerk did not work out, he decided to not allow her back because she had used a racial slur in the workplace and then quit when confronted about it. Hetrick was also concerned that if the Plaintiff returned to a bargaining unit, the union would file a grievance, as it did when a salaried employee, Mike Paver, was allowed to transfer to a bargaining

9

unit.

On November 15, 2002, the Plaintiff filed a charge of discrimination with the Equal Employment Opportunity Commission, alleging sex discrimination in violation of Title VII and the Equal Pay Act. The charge made no reference to any instances of sexual harassment.

The Plaintiff admits that, during her employment, she never complained of sexual harassment to any of the Defendant's managers. She also admits that Gullickson never touched her in a sexual manner or asked her for sexual favors.

### E.  Equal Pay Act Claim

The Equal Pay Act prohibits employers from paying employees of one gender less than employees of the other gender for doing the same work, unless the difference is justified by reasons other than sex. 29 U.S.C. § 206(d)(1). To establish a *prima facie* claim for wage discrimination, a female plaintiff must show that (1) higher wages were paid to a male employee, (2) for equal work, requiring substantially similar skill, effort, and responsibilities, and (3) the work was performed under similar working conditions. *Cullen v. Ind. Univ. Bd. of Trs.*, 338 F.3d 693, 698 (7th Cir. 2003). "In determining whether two jobs are equal, the crucial inquiry is 'whether the jobs to be compared have a "common core" of tasks, i.e., whether a significant portion of the two jobs is identical.'" *Id*. (quoting *Fallon v. Illinois*, 882 F.2d 1206, 1209 (7th Cir.1989)). Once a common core is established, "the court must ask whether any additional tasks make the jobs 'substantially different.'" *Id*. (quoting *Fallon,* 882 F.2d at 1209.). The court must compare the positions, not the persons holding them.

If the plaintiff establishes a *prima facie* case, the burden shifts to the employer to show that

the pay difference between the two jobs is based on one of these four reasons: "(1) a seniority system; (2) a merit system; (3) a system which measures earnings by quantity or quality of production; or (4) any other factor other than sex." *Fallon*, 882 F.2d at 1211.

The Plaintiff is unable to establish the second element of her *prima facie* case, as she cannot demonstrate that her position required the same level of skill, effort, and responsibility as Warner's position. Warner took the shipping supervisor's position, earlier occupied by King for eighteen years. This was a single position at the Hartford plant that covered all shipping duties, during all shifts. After Warner, and two previous persons, failed to manage the shipping supervisor's position adequately, the Defendant created an assistant supervisor's position to aid the shipping supervisor. However, even with this change, Warner was unable to fulfill his duties competently. The Defendant fired Warner but did not keep his position. Instead, it restructured the shipping department and created two supervisor positions of the same stature and responsibility that shared equally in the managerial duties. Under this structure, the Plaintiff's position, unlike Warner's, was not ultimately responsible for the shipping department's activities but was reduced in importance and rank by splitting Warner's position into two. As a result, the Plaintiff's position was substantially different from Warner's position and the Plaintiff cannot make out a *prima facie* case under the Equal Pay Act.

**F.  Sexual Harassment Claim**

In her Complaint, the Plaintiff alleges for the first time that "[t]he events with Dean Gullickson created [for her] an intimidating, hostile or offensive working environment []." Compl. at ¶ 36. The Plaintiff is precluded from bringing this sexual harassment claim against the Defendant

11

because it is outside the scope of her EEOC charge.

A plaintiff may not bring claims under Title VII that were not originally included in charges to the EEOC. *Sitar v. Ind. Dept. of Transp.*, 344 F.3d 720, 726 (7th Cir. 2003). "This rule serves two purposes: affording the EEOC the opportunity to settle the dispute between the employee and employer, and putting the employer on notice of the charges against it." *Id*. "The test for determining whether an EEOC charge encompasses the claims in a complaint . . . grants the Title VII plaintiff significant leeway: all Title VII claims set forth in a complaint are cognizable that are like or reasonably related to the allegations of the charge and growing out of such allegations. *Cheek v. W. & S. Life Ins. Co.*, 31 F.3d 497, 500 (7th Cir. 1994) (citation and quotation signs omitted). The claim in the complaint must be reasonably expected to grow out of an EEOC investigation of the allegations in the charge. *Id*. "The claims are not alike or reasonably related unless there is a factual relationship between them. This means that the EEOC charge and the complaint must, at minimum, describe the *same conduct* and implicate the *same individuals*." *Cheek*, 31 F.3d at 501.

The Plaintiff's sexual harassment claim does not reasonably grow out of her allegations in the EEOC charge. In the EEOC charge, the Plaintiff complained about not being able to transfer from a salaried position to a union position, while a male salaried employee was able to do so. She also complained of being paid less than a male employee in her position. Yet, in her lawsuit, the Plaintiff accused the Defendant of sexual harassment, arising out of her encounter with Gullickson, when he invited her for a drink and a good time. The latter allegation is not reasonably related to the sex discrimination or equal pay charges. The Plaintiff's contentions before the EEOC did not give the Defendant a notice that she was also accusing it of permitting sexual harassment in the workplace. Moreover, in the EEOC charge, the Plaintiff singled out Gorham as the wrongdoer who

12

did not allow her to transfer back to her union job, while in her sexual harassment claim, she accuses Gullickson of sexual impropriety, thus describing different conduct and implicating different individuals.

Since the Plaintiff's sexual harassment claim is outside the scope of her EEOC charge, the Court is precluded from considering it. *See id*. ("Because an employer may discriminate on the basis of sex in numerous ways, a claim of sex discrimination in an EEOC charge and a claim of sex discrimination in a complaint are not alike or reasonably related just because they both assert forms of sex discrimination.").[2]

## G. Sexual Discrimination Claim

---

[2] Even if the Court were to consider the Plaintiff's sexual harassment claim, she would not prevail. In order to be actionable, the workplace harassment must be so severe or pervasive that it altered the conditions of the Plaintiff's employment. *Meritor Sav. Bank v. Vinson*, 477 U.S. 57, 67 (1986). "Not every unpleasant workplace is a hostile environment. The occasional vulgar banter, tinged with sexual innuendo, of coarse or boorish workers would be neither pervasive nor offensive enough to be actionable. The workplace that is actionable is the one that is hellish." *Rogers v. City of Chicago*, 320 F.3d 748, 752 (7th Cir. 2003) (citations and quotation marks omitted). "The Plaintiff would have to show that the work environment was both subjectively and objectively hostile." *Harris v. Forklift Systems, Inc.*, 510 U.S. 17, 21–22 (1993).

Gullickson's one time invitation to go out for a drink and to have a good time did not make the Plaintiff's working environment hellish. She declined his invitation and did not hear from him again. Neither this incident nor her coworkers calling her and Federspiel "girlfriends" constituted sexual harassment. *See Rogers*, 320 F.3d 748, 752 (7th Cir. 2003) ("[W]e held that the plaintiff could not establish an objectively severe environment even though, over a seven-month period, the plaintiff's supervisor had: called her a 'pretty girl'; grunted 'um um um' when the plaintiff wore a leather skirt to the office; told the plaintiff that her presence made the office 'hot'; suggested that all 'pretty girls,' a category that presumably included the plaintiff, 'run around naked'; told the plaintiff that he left the company Christmas party early because he 'didn't want to lose control' at the sight of 'so many pretty girls'; and suggested to the plaintiff that the solitary vice was his chief consolation in his wife's absence."); *see also McPherson v. City of Waukegan*, 379 F.3d 430, 439 (7th Cir. 2004) ("While [the supervisor's] inquiries about what color bra [the plaintiff] was wearing, his suggestive tone of voice when asking her whether he could 'make a house call' when she called in sick and the one occasion when he pulled back her tank top with his fingers were lamentably inappropriate, we agree with the district court that, due to the limited nature and frequency of the objectionable conduct, a hostile work environment did not exist . . . .").

Finally, there is no evidence that the Plaintiff has taken advantage of the Defendant's nondiscrimination in employment policy, so as to give the Defendant a chance to right any wrongs allegedly committed against her. *See Burlington Indus., Inc. v. Ellerth*, 524 U.S. 742, 764 (1998) (noting the employees duty to report harassing conduct before it becomes severe or pervasive).

"An employee alleging sex discrimination can either proceed directly, by presenting direct and/or circumstantial evidence on the issue of discriminatory intent, or indirectly, by utilizing the *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973), burden-shifting method." *Wyninger v. New Venture Gear, Inc.*, 361 F.3d 965, 978 (7th Cir. 2004). The Plaintiff has failed under either method to show that the Defendant discriminated against her on the basis of her sex.

"To avoid summary judgment under the direct method, [the plaintiff] must present sufficient direct or circumstantial evidence to create a reasonable inference that [she] was fired because of [her] sex." *Steinhauer v. DeGolier*, 359 F.3d 481, 485 (7th Cir. 2004). The Court is unable to discern any facts from which it could determine or infer that the Defendant discriminated against her because she is a woman.

Under the indirect method, the plaintiff must first establish a *prima facie* case, showing that: "(1) she is a member of a protected class; (2) she was performing her job satisfactorily; (3) she suffered an adverse employment action; and (4) at least one similarly situated employee, not in her protected class, was treated more favorably." *Wyninger*, 361 F.3d at 978 (7th Cir.2004). If she is able to show these elements,

> the employer can produce evidence of a legitimate nondiscriminatory explanation of its adverse employment action; the employer would then be entitled to summary judgment unless the employee can rebut this explanation with evidence that it is pretextual. The employer's explanation can be 'foolish or trivial or even baseless' so long as the company 'honestly believed' in the reasons it offered for the adverse employment action.

*Id*. at 978–79 (citations omitted).

The Plaintiff cannot establish the third and fourth elements of the prima *facie case*. Moreover, even if, for the sake of an argument, the Court assumed that she established a *prima facie*

case, she has not established that the Defendant's reason for her termination was pretextual.[3]

The Plaintiff claims the Defendant discriminated against her because it did not allow her to return to a bargaining unit position, while a male employee—Mike Paver—was allowed such transfer. Before the Plaintiff became a shipping supervisor, she left the bargaining unit and assumed a roll stock clerk's position upon a promise from Hetrick that, if things did not work out, she would be able to resume her original work. Three days after the Plaintiff quit her shipping supervisor's position at the meeting with Gorham and Hedden, she contacted Hetrick and asked to be reinstated to the bargaining unit. Hetrick decided against the reinstatement because of her attitude in being reprimanded over the racially offensive comments and because the union filed a grievance when Mike Paver was allowed to transfer from the salaried position to the bargaining unit.

Since the Plaintiff voluntarily quit her job as a shipping supervisor, she may not claim that her leaving was an adverse employment action. The Plaintiff was not a victim of constructive discharge, "which occurs when an employee's discriminatory working conditions become so intolerable that a reasonable person in her position would be compelled to resign." *Perry v. Harris Chernin, Inc.*, 126 F.3d 1010, 1015 (7th Cir. 1997). Thus, even if she believed that the Defendant discriminated against her, she was expected to remain in her position unless the conditions were beyond "ordinary discrimination." *Id*. Having voluntarily resigned, after the meeting with her supervisors in which they addressed their concerns over her use of racially hostile language, the Plaintiff now may not insist that she suffered an adverse employment action when she left the company.

Nevertheless, the Plaintiff may argue that she suffered an adverse employment action when,

---

[3]This, as was the case with the Plaintiff's Equal Pay and Sexual Harassment claims, is true even if the Court had not stricken her response to the Defendant's motion for summary judgment.

after quitting the company, Hetrick refused to reinstate her to a bargaining unit position. Even if the Court were to assume that the refusal was an adverse employment action, the Plaintiff is unable to show that, under the same circumstances, a similarly situated male employee was treated more favorably than she, so as to satisfy the fourth element of the *prima facie* case. "To meet her burden of demonstrating that another employee is 'similarly situated,' a plaintiff must show that there is someone who is directly comparable to her in all material respects." *Patterson v. Avery Dennison Corp.*, 281 F.3d 676, 680 (7th Cir. 2002) (citing *Greer v. Bd. of Ed. of City of Chicago*, 267 F.3d 723, 728 (7th Cir. 2001)). "Such a showing normally entails establishing that 'the two employees dealt with the same supervisor, were subject to the same standards, and had engaged in similar conduct without such differentiating or mitigating circumstances as would distinguish their conduct or the employer's treatment of them.'" *Snipes*, 291 F.3d at 463 (quoting *Radue v. Kimberly-Clark Corp.*, 219 F.3d 612, 617–18 (7th Cir. 2000)).

Presumably, the Plaintiff believes that such employee is Mike Paver because the Defendant allowed him to transfer from the salaried position to the bargaining unit. Yet, there is no evidence that the Plaintiff was similarly situated to Paver. The Court does not even know what Paver's responsibilities were and who supervised him. Most importantly, however, unlike the Plaintiff, Paver did not use racial slurs in the presence of other employees, quit the company when confronted about his behavior, and then asked to be reinstated into the bargaining unit. As a result, the Plaintiff's *prima facie* case fails.

The Plaintiff's inability to establish *prima facie* case is not the only shortcoming in her case. The Defendant put forth a legitimate, nondiscriminatory reason for not allowing her to return to its plant: she used racially inappropriate language and quit her job when confronted about it. Yet, even

in the stricken response the Plaintiff has not attempted to rebut the Defendant's explanation. If the Courts allow the employer's reasons to be "foolish or trivial or even baseless," so long as they are honest, then the Defendant's explanation that it did not want back an employee who disparaged black workers in the presence of others and did not want more trouble from the union will suffice. Thus, the Plaintiff's sexual discrimination claim may not proceed further.

## CONCLUSION

For the reasons explained above, the Court GRANTS the Defendant's Motion to Strike [DE 50], GRANTS the Defendant's Motion for Summary Judgment [DE 45], and DENIES the Defendant's Motion to Continue Final Pretrial Conference and Trial [DE 52] as moot. Furthermore, the Court ORDERS the Clerk to enter judgment in favor of the Defendant and against the Plaintiff.

SO ORDERED on May 26, 2005.

              s/ Theresa L. Springmann
              THERESA L. SPRINGMANN
              UNITED STATES DISTRICT COURT